FIRST JACKSON SECURITIES CORPORATION *v.*
B. F. GOODRICH COMPANY

No. 43563 June 14, 1965 176 So. 2d 272

*Montgomery & Varnado,* Belzoni, for appellant.

*Eugene J. Raphael,* Greenville, for appellee.

522

BRADY, TOM P., J.

This is an appeal by First Jackson Securities Corporation, a Mississippi corporation, hereinafter called First Jackson, from a judgment rendered in the Circuit Court of Humphreys County on February 6, 1964, wherein the appellee, B. F. Goodrich Company, recovered a default judgment against the appellant in the sum of $7,039.89. Subsequently, at the same term of court, a judgment in the sum of $3,084.24, together with all costs, was taken against another garnishee, Deposit Guaranty Bank & Trust Company, in favor of appellant.

The basic facts out of which this lawsuit arose are briefly these: B. F. Goodrich Company, hereinafter called Goodrich, attempted to collect an account owed by Boyd Kellum, a former employee of First Jackson. Goodrich sued Kellum and secured a judgment of $6,274.-12 against him on February 6, 1962. First Jackson was not a party to that suit.

In April 1963, about two months after Kellum had left the employment of First Jackson, a writ of garnishment was issued against First Jackson on Goodrich's judgment against Boyd Kellum. There is nothing in the record to indicate that First Jackson had any knowledge of the judgment, or of Kellum's indebtedness to Goodrich. Appellant's only connection with this matter was as Kellum's employer for a short while. The record indicates that Kellum has not been reemployed and that First Jackson was not indebted to Kellum at the time of the termination of his services.

On June 28, 1963, First Jackson maintained an office in the Deposit Guaranty Bank & Trust Company in Jackson, Mississippi. Mr. Charlie Mac Jones, who was vice president and general manager of First Jackson, was in charge of this office. The record indicates that First

Jackson had a resident agent, Charles Shapero, for the service of process, but it is not clear whether he was resident agent at the time the writ of garnishment was issued. The Sheriff of Hinds County received the writ of garnishment and, on June 28, 1963, through his deputy, made an effort to serve it. On its face the writ shows that the agent of First Jackson was Charles Shapero. The record fails to show that the sheriff made any attempt to serve it on Charles Shapero. The record discloses that he did not attempt to serve it on Mr. Jones, the vice president and general manager of the corporation and the officer in charge of the Jackson office. Instead, he delivered it to Mrs. Judith Ferguson. The return showed it was delivered "to Mrs. Judith Ferguson Secretary."

The record discloses that Mrs. Judith Ferguson was not the secretary of First Jackson; that she was not, nor has she ever been, an officer of the corporation; and that she had no managerial authority and no voice whatsoever in the operations of the corporation or in forming or carrying out company policy. She was a minor employee who took and transcribed dictation, answered the phone, and, when Mr. Mac Jones was in the office, acted as receptionist to the few clients who called. Ninety percent of the business was handled over the telephone. The limitation of her employment was clearly established by her testimony and that of all other witnesses. Untrained and inexperienced in such matters, and not acquainted with the significance of the writ of garnishment, Mrs. Ferguson naively signed the writ and mailed it back to the Circuit Clerk of Humphreys County in Belzoni. The record discloses that the writ of garnishment was never delivered to Mr. Charlie Mac Jones and that he knew nothing about it until long after the default judgment had been rendered. Mrs. Ferguson's testimony is not certain as to whether or not she put the writ on Mr. Jones' desk. However, his testimony is

positive that he never saw or received the garnishment or knew anything about it until long after the default judgment had been taken, and the motion to quash and dismiss the judgment was filed.

The record wholly fails to show that First Jackson had any notice that the writ of garnishment was pending in the Circuit Court of Humphreys County or had any inkling of the same until about four months after the default judgment had been taken. Goodrich did not immediately advise First Jackson of this default judgment, but waited until the ninety day time for appeal had expired, and then notified First Jackson in June 1964. The record shows that this was the first time that anyone with any authority or responsibility in First Jackson had any knowledge that the corporation was involved in any court action in Humphreys County. Upon discovering this fact, the appellant immediately employed attorneys and filed its motion to set aside and vacate the default judgment. The basis for the motion was that First Jackson had no notice that the writ of garnishment had been filed against it, that no process was ever served on First Jackson, and that Mrs. Ferguson was not the secretary, but merely an employee of First Jackson, without any managerial or executive responsibility whatsoever; that she never delivered the process to any employee or officer, and that no official of First Jackson ever received knowledge of the issuance of the writ or its attempted service; that at the time of the issuance of the writ Charles Shapero, who was designated as agent, was not served or notified of the writ; and that the judgment was void. The motion further stated that First Jackson was not indebted to Kellum and had no assets of his in its hands at or since the time of the issuance of the writ. This motion was contested by Goodrich, and its contest placed in issue the grounds urged by First Jackson in its motion to vacate.

In addition to this writ of garnishment against appellant, other writs of garnishment were filed by Good-

rich, one being against the Deposit Guaranty Bank & Trust Company of Mississippi, which garnishee replied that it did have on deposit in its hands the sum of $3,084.24 of First Jackson's funds. Motions, which appellee also contests, were made to quash and dismiss these other writs. These motions are now waiting the determination of the first motion to vacate the judgment against the appellant, all of which turn upon the question of the validity of the original process delivered to Mrs. Judith Ferguson. The circuit court ruled that the delivery of process to Mrs. Ferguson was sufficient service on the appellant and denied all of the appellant's motions.

The fundamental issue for consideration is whether or not the Mississippi statutes authorize process upon a corporation to be obtained by the delivery of a copy of the process to a minor employee, such as Mrs. Judith Ferguson. It is vigorously contended by the appellant that the delivery of the copy of the writ to Mrs. Ferguson is void and will not support a default judgment based thereon. The appellant further claims that the return of the officer serving any process may be shown to be untrue by either party and that a default judgment rendered without proper process is void and will be set aside at a later term of court upon motion of either party. While the appellant urges several assignments of error, the two contentions hereinabove stated in substance constitute a summary thereof. The sections of Mississippi Code Annotated (1956) which are relevant are as follows:

Sec. 1866. How served and effect of when corporation a defendant.

If the defendant in any suit or legal proceeding be a corporation, process may be served on the president or other head of the corporation, upon the cashier, secretary, treasurer, clerk, or agent of the corporation,

or upon any one of the directors of such corporation.
. . .

Sec. 5319. Resident agent: how designated.

Every domestic corporation shall maintain an office in the county of its domicile in this state, either in charge of an officer or officers of the corporation, or in charge of a resident agent duly designated for the service of process by the directors (by whatever name called) of such corporation, a duly certified copy of the resolution designating such resident agent, and the written acceptance of such agency by the agent, to be filed with the secretary of state.

Sec. 5309-23 (Supp. 1964). Service of process on corporation.

. . . .

Whenever a corporation shall fail to appoint or maintain a registered agent in this state, or whenever its registered agent cannot with reasonable diligence be found at the registered office, then the Secretary of State shall be an agent of such corporation upon whom any such process, notice, or demand may be served. Service on the Secretary of State of any such process, notice, or demand shall be made by delivering to and leaving with him, or with a person having charge of the corporation department of his office, two true copies of such process, notice or demand . . . .

Section 1866 contemplates that the president or other head of the corporation, or the cashier, secretary, treasurer, clerk or agent or any one of the directors of the corporation, if found, can be served. The degree of rank and the order in which the officers are named indicate the order in which service of process unquestionably can be properly made. The statute evidently contemplates that the officers of the corporation should be served, if they can be found, prior to a clerk or agent, or a director.

Section 5309-23 (Supp. 1964), also indicating priority for service, anticipates that when a corporation fails to appoint or maintain a registered agent in this state, or when the resident agent cannot with reasonable diligence be found at the registered office, the Secretary of State shall be the agent of such corporation for the service of process, notice or demand. The statute specifies that the service shall be made by delivering to the Secretary of State and leaving with him, or with a person having charge of the corporate department of his office, two true copies of such process, notice, or demand.

■■ ■ When all of these sections are read and construed together, it is unmistakeably clear that the obvious intent of the legislature was to see that process be served upon such person as will give the corporation notice so as to afford it an opportunity to state its position or defend itself in any lawsuit or contest before a judgment is rendered against it. It is universally recognized that ■■■ no judgment, order or decree is binding upon a party who has had no notice of the proceeding against him.

In 42 Am. Jur. *Process* sections 3 and 4 (1942), we find reiterated the same basic reasoning:

Sec. 3. Object of Service of Process; Notice to Party. —The principal object or purpose of original process is to give to the party to whom it is addressed notice of the proceeding against him; it is the means by which he is afforded opportunity to appear before and to be heard by the court in the defense of his person, property, and rights, and thereby have them safeguarded. Service of process is for the purpose of notifying a defendant of the claim or charge against him so that he may properly prepare himself to answer it. It is this notice which gives the court jurisdiction to proceed. . . .

Sec. 4. Acquisition of Jurisdiction; Effect of Omission of Service. . . .

A judgment against one who was not given notice in the manner required by law of the action or proceeding in which such judgment was rendered lacks all the attributes of a judicial determination; it is judicial usurpation and oppression, and can never be upheld where justice is fairly administered. . . .

██ ██ It must be conceded that without process upon a proper party the proceedings of any court are void. Of course, where the defendant is a corporation the process must be delivered or served on an official or proper person on behalf thereof. The basic purpose of the process is to impart notice, and all the laws require that this notice be delivered to someone connected with the corporation in such position that justice can equitably feel that the corporation itself has notice of the suit. It is pointed out in 42 Am. Jur. *Process* section 108 (1942) as follows:

Sec. 108. Person Who May Be Served; Statutory Designation.—A corporation, being an artificial entity, cannot be personally served with process, and can be served only through an officer or agent of the company, or someone designated by law to receive service of process in its behalf. At common law, service was made on such head officer of a corporation as secured knowledge of the process to the corporation. . . .

The record is completely silent as to whether or not the sheriff or the deputy attempted to obtain service upon the resident agent or upon the president, cashier, secretary, treasurer, vice president and general manager, Mr. Jones, clerk or agent, or any director of the corporation. The sheriff's return fails to indicate that any effort was made to contact any of these officers of the corporation or persons designated in the aforesaid statutes. He served it on ''Mrs. Judith Ferguson Secretary.''

Obviously the deputy sheriff erroneously assumed that she was the secretary of the corporation. The proof is that George L. Lennox is the secretary of First Jackson, and is a resident of Memphis, Tennessee, as are the other elected officers.

The appellee in substance concedes that Mrs. Ferguson was not the secretary of the appellant and wisely abandons its theory that service was sufficient because she was the secretary; it now turns to and relies upon the hypothesis that she is a clerk or agent. We must therefore determine if she was such a clerk or agent as to be included in the statutory requirements of section 1866.

The appellee contends in Point I of its brief that the judgment cannot be set aside, unless it was absolutely void, since the appellant's motion to vacate the judgment was not made until after the expiration of the term at which the judgment was rendered. The appellant is in accord with the assertion of the appellee and contends that the judgment is void.

Point II of appellee's brief is that the return on the writ of garnishment was not false; that it was however inaccurate but amendable, and mere inaccuracy or irregularity in the return could not affect the validity of the service nor render the judgment void. The appellant does not take serious issue with Point II because, as it points out, the appellee in substance concedes that the return was false in that Mrs. Ferguson did not hold the office of Secretary of First Jackson.

It is upon Point III of appellee's brief that this case will be affirmed or reversed. Appellee contends in Point III that Mrs. Judith Ferguson was a clerk and also, under the circumstances of this case, an agent of the appellant; that when the writ of garnishment was served on the corporation by handing a copy of it to Mrs. Ferguson, the circuit court acquired jurisdiction over the person of the corporation and it was in court for the

February, 1964 Term; therefore, the judgment rendered against First Jackson at that term was not a void judgment.

It is unnecessary for us to consider Points I and II urged by the appellee and contested by the appellant but, in passing, we point out that the appellee cites five cases in support of its Point II, namely, Reed v. General Motors Acceptance Corp., 228 Miss. 121, 87 So. 2d 95 (1956); McIntosh v. Munson Road Machinery Co., 167 Miss. 546, 145 So. 731 (1933); Great Southern Life Ins. Co. v. Gomillion, 145 Miss. 314, 110 So. 770 (1927); Kelly v. Harrison, 69 Miss. 856, 12 So. 261 (1892); and Alabama & Vicksburg Ry. v. Bolding, 69 Miss. 255, 13 So. 844 (1891).

In *Alabama & Vicksburg Ry.* and *Great Southern Life Ins. Co.*, default judgments were not rendered until after a faulty return had been amended, and therefore no question of the adequacy of the process was involved. In *Alabama & Vicksburg Ry.* the default judgment rendered on a faulty return was first set aside. The return was amended and the renewed default judgment was then rendered. It appears, therefore, that the process showed the correct and proper return when the default judgment was rendered in both cases.

In the McIntosh case the president of the corporation was served and there was no question about the court obtaining jurisdiction of the subject matter and the parties.

In the Reed and Kelly cases, the question of process upon the corporation was not involved and, in each case, the Court specifically found that the individual defendant was handed a copy of the process and actually knew that the suit was pending. Thus, those two cases are distinguished from the case at bar, as is also the McIntosh case, since the appellant here did not have any idea that the suit was pending or that judgment had been obtained against it until more than three months thereafter.

It is to Point I of appellant's brief and to Point III of appellee's brief that we now address ourselves. Here the litigants cross swords, since appellee's Point III is a flat denial of the first point urged by appellant. Appellant's first point is that the Mississippi statutes which authorize that service of process upon a corporation must be made by delivery of a copy of the process to the president or some other official of the corporation, or to an agent authorized by the corporation to receive process, do not authorize service by delivery of a copy of the process to a minor employee. Appellant urges that process executed by delivery of a copy of the writ to a minor employee of a corporation is void and will not support the default judgment based thereon; that the service of the process upon Mrs. Ferguson is not such service as is contemplated under the statutes of the State of Mississippi which authorize service upon the clerk or agent. To the contrary, the appellee, in substance, contends that since Mrs. Ferguson was an employee in the office and did clerical work that she was appellant's agent and clerk.

It is true that Mrs. Ferguson was an employee of appellant, but the word "employee" is not synonymous with the word "agent", because an agent is one who stands in the shoes of his principal; he is his principal's alter ego. In 2 C.J.S. *Agency* section 1 c. (1936), we find the following:

> An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and to render an account of it. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do.

> The most characteristic feature of an agent's employment, is that he is employed primarily to bring about business relations between his principal and third per-

sons, and this power is perhaps the most distinctive mark of the agent as contrasted with others, not agents, who act in representative capacities.

The record is clear that Mrs. Ferguson was not employed for the purpose of bringing about business between her employer and others. She was employed only to carry out specific tasks and assignments which were given her as a secretary and receptionist in the office subsequent to or before the time the business was secured.

██ █ It is unnecessary to consider Mrs. Ferguson as a potential resident agent, duly designated for the service of process by the directors, for the reason that the record is completely silent in this regard. It is appellee's contention that Mrs. Ferguson was a clerk, upon which the determination of this case ultimately turns. The fact that a person is an employee does not per se establish the fact that the person is also a clerk. A janitor, a cleaning woman, or an elevator operator is certainly an employee, but could scarcely be considered a clerk, though each assists in the business of the employer. A lawyer, a judge and a doctor occasionally do clerical work, but none is classified as a clerk. Can it be said that Mrs. Ferguson was such a clerk as to be included in the statutory requirements of section 1866?

The Oxford English Dictionary (1933), aside from the archaic, ecclesiastical, scholarly, and governmental definitions, defines, in current use, a clerk as "an officer who has charge of the records, correspondence, and accounts of any department, court, corporation, or society and *superintends the general conduct of its business* . . . ."

In Black's Law Dictionary (3d ed. 1933) we find the word "clerk" defined under the subject, "In Commercial Law," as: "A person employed by a merchant, or in a mercantile establishment, as a salesman, bookkeeper, accountant, amanuensis, etc., invested with more or less authority in the administration of some branch or

department of the business, while the principal himself superintends the whole.''

Likewise, Webster's New International Dictionary (2d ed. 1934) defines the word ''clerk'' as follows:

1. A clergyman; an ecclesiastic. . . .

2. A layman who performs some minor ecclesiastical office. . . .

3. A person who can read, or read and write; a scholar; a learned person; a man of letters. Archaic & Hist.

4. One employed to keep records or accounts, or to have charge of correspondence, or the like; a scribe; an accountant; as, the *clerk* of a court; a town *clerk;* a bank *clerk. Clerk* is an indefinite term of wide application, and may include employees clothed with authority to act in various weighty matters for their employers, such as the teller of a bank or the secretary of a corporation.

5. An assistant in a shop or store; a salesman or saleswoman, esp. in a retail store. U.S.

Under all of these definitions Mrs. Ferguson fails to qualify because she failed to have charge of the records and the accounts; she failed to operate the department; she failed to superintend the general conduct of the business; and she lacked the authority in the administration of some branch or department of the appellant's business. She was not clothed with authority to act in various matters of importance for her employer and the record indicates that she was not permitted nor did she endeavor to make any sales or bonds or have any contact with the clients of appellant, except in a purely inconsequential way of casual association.

In 14 C. J. S. *Clerk* at page 1206 (1939) we find various and sundry definitions or interpretations of what constitutes a clerk, as follows:

(A) salesman in a store or shop, a shop assistant, a stenographer and office girl, who served as an as-

sistant in the office of her employer, a stenographer in charge of office supplies, or a teller in a bank; but not to include a bookkeeper, for service of summons on corporation . . . .

In the case of Chambers Bros. & Co. v. The King Wrought-Iron Bridge Manufactory, 16 Kan. Rep. 270, 276 (1876) service was obtained upon Walter F. Johnson, the clerk and secretary of the defendant, and the return stated that service was obtained upon said clerk or secretary, "being unable to find, in the county of Leavenworth, Kansas, the president, chairman of the board of directors or trustees, or other chief officer of said defendant." (16 Kan. Rep. at 273). The Supreme Court of Kansas held:

A service of a summons on a person who keeps books for a corporation, but who is not the secretary, *or the clerk of the corporation,* or any other officer or agent of the corporation upon whom a legal service may be made, is not a vail service upon the corporation. It is true, a book-keeper is in one sense a clerk. Any person who performs clerical duties is in one sense a clerk. But the service of a summons on a corporation cannot be made on every person who may in some remote sense be styled a clerk of the corporation. It could not be made on a deputy or under-clerk. It must be made on *the clerk,* the principal clerk of the corporation, if made on a clerk at all. It must be made upon the person *who holds the office* of clerk, or secretary, as the case may be. (Emphasis on line 3 of quotation ours.)

The similarity between the facts in that case and the case at bar is striking. In the Kansas case a bookkeeper was involved, while in the case at bar a stenographer is involved.

In McGoldrick v. Traphagen, 88 N.Y. Rep. 334, 338 (1882) the Court stated:

(W)e think that the clerk intended was one who had something to do with and had knowledge generally of the business of his employer in reference to goods sold or work done, so that he could testify on that subject.

Appellee relies upon the following cases as authority for the position it takes in its Point III: Illinois Cent. R.R. v. McDaniel, 246 Miss. 600, 151 So. 2d 805 (1963); Alabama & Vicksburg Ry. v. Bolding, 69 Miss. 255, 13 So. 844 (1891); Hall v. Gulf South Utilities, Inc., 96 F. Supp. 351 (1951).

The first two cases cited immediately above deal with railroads, and they were decided under the special section of our statutes dealing with process upon a railroad, which process does not have application generally to other corporations. In *Hall v. Gulf South Utilities, Inc.,* the process was served upon its duly elected secretary; a second copy was served on a secretary in its main office; and a third copy was served on the Secretary of State by registered mail. There can be no doubt in that case that the statute was amply complied with and the defendant was amply notified of the impending lawsuit.

While the appellee urges that Mrs. Ferguson was a clerk or agent of the corporation, the record fails to disclose that at the time of the rendering of the default judgment there was anything to warrant a finding by the lower court that Mrs. Ferguson was the agent or clerk of the corporation. The return recites that Mrs. Ferguson was a secretary, while the judgment recites that the sheriff of Hinds County had obtained service "by delivering a true copy of said writ to Mrs. Judith Ferguson, secretary of said First Jackson Securities Corporation, garnishee." It does not recite that she was a clerk or agent, and the proof conclusively shows that Mrs. Ferguson was not the secretary, and therefore the return is false. The alleged intent of the sheriff to serve the proper person plays no part in the question of valid service.

While the lower court did not set aside and vacate the judgment in the McIntosh case, nevertheless, this Court is not powerless to do so. The default must stand or fall upon the record and it does not show that the person upon whom process was issued was the agent or the clerk of appellant. To this extent the record is fatally defective, and therefore the judgment must be set aside, as was held in Motors Ins. Corp. v. Holland, 229 Miss. 262, 90 So. 2d 392 (1956); Superior Oil Co. v. Smith, 200 Miss. 782, 29 So. 2d 114 (1947) (see cases cited therein); and Masonite Corp. v. Burnham, 164 Miss. 840, 146 So. 292 (1933).

In the Masonite case the person who was actually served was W. H. Mason, vice president and statutory agent for service of process, but there was no proof of his agency in the record and therefore the judgment was void.

In Globe Rutgers Fire Insurance Company v. Sayle, 107 Miss. 169, 65 So. 125 (1914), the Court held:

The declaration does not allege that the defendant had executed the statutory power of attorney, and there was no legal evidence before the court that such, in fact, was the case.

To sustain a judgment by default it must affirmatively appear that the defendant was served with process. . . . . Before a default judgment may be rendered the record must show the service of process on defendant, or upon its attorney in fact. There is no service on the defendant appearing in the record, and there is nothing in the record to establish that defendant had executed the power of attorney prescribed by the statute. . . . (107 Miss. at 180-81.)

We held in Anderson Mercantile Company v. Cudahy Packing Company, 127 Miss. 301, 90 So. 11 (1921), that a proper return is jurisdictional and without a return showing that the person served was one of the officers

authorized by statute to receive process, a default judgment is void.

In Watkins Machine & Foundry Company v. Cincinnati Rubber Manufacturing Company, 96 Miss. 610, 52 So. 629 (1910), a default judgment was secured against a domestic corporation upon a return of the process which did not show the relationship to the corporation of the individual served. We held that the record must affirmatively show that the person served was connected with the corporation in one of the capacities set out in our statutes. In that case the facts were set out as follows:

> The appellee, Cincinnati Rubber Manufacturing Company, sued appellant, Watkins Machine & Foundry Company, in the circuit court of Forrest county, on an account for goods, wares, and merchandise, sold appellant by appellee, and recovered a judgment by default at the return term of the court on a summons returned as follows: "I have this day executed the within writ personally by delivering to the within named R. L. Bennett, for Watkins Machine & Foundry Co., a true copy of this writ. This 20th day of October, 1909. J. C. Magruder, Sheriff." The Watkins Machine & Foundry Company is a Mississippi corporation. There is nothing in the record to show what connection, if any, R. L. Bennett had with the Watkins Machine & Foundry Company — whether he was president, director, agent, employe, or what. From that judgment the Watkins Machine & Foundry Company prosecutes this appeal, assigning as error the rendition of the judgment on the return of the summons above set out.

The Court, speaking through Justice W. D. Anderson, stated as follows:

> The judgment of the court below was erroneous. Section 3932, Code 1906, prescribes the manner in which process shall be served on a corporation defendant,

which may be in one of several ways, namely: "On the president or other head of the corporation, upon the cashier, secretary, treasurer, clerk or agent of the corporation, or upon any one of the directors of such corporation," etc. It is true the judgment recites that the defendant had been duly and legally served with process; and it is insisted that the presumption will be indulged in, from this recital in the judgment, that the court satisfied itself in some legal way that Bennett was one of the officers or agents of the company on whom process could be served under the statute. This contention is not sound. The judgment is based on the facts as they appear in the record. There was no authority of law for the court to go outside of the record to ascertain Bennett's connection with the corporation. There was no issue before the court on which testimony could be taken to so ascertain. The finding in the judgment that the process was legally served was an erroneous conception of the law by the court, based on the record as made.

This is not a collateral attack on this judgment. It is a direct attack by appeal, which is the proper manner to avail of irregularities and errors like the one here complained of. A. & V. Ry. Co. v. Bolding, 69 Miss. 255, 13 South. 844, 30 Am. St. Rep. 541.

Reversed and remanded.

 █ From the foregoing, it is apparent that the default judgment in the case at bar is based upon the wishful, erroneous conclusion of the deputy sheriff that Mrs. Ferguson was secretary of the appellant corporation. The default judgment is void of any statement or any proof to the effect that Mrs. Ferguson was the clerk or agent, other than a mere employee. It follows, therefore, that the judgment cannot be sustained on that hypothesis. The return is jurisdictional and, since the false return rendered by the sheriff denied the court jurisdiction, the default judgment is void and hereby set aside.

Mrs. Ferguson was an employee charged with carrying out certain specified nondiscretionary duties of a skillful and mechanical nature, as directed by her immediate employer. She was not a person upon whom our statutes authorize process against a corporation to be served. The appellant had no knowledge that this action was pending. The appellee could have checked and ascertained that Mrs. Ferguson was only a minor employee and not the secretary of the corporation. The appellee could have obtained valid service upon the Secretary of State, if a resident agent had not been appointed. By obtaining service upon the Secretary of State, it would have unquestionably notified the appellant of the existing judgment and pending garnishment. It elected not to do so. It must now bear the burden of its election.

The decisions cited and the above noted sections of the code relate to the question of jurisdiction of the person, an essential part of due process. For this reason there must be positive compliance with the statutory requirements. In the present day economic world, vast enterprises require the services of many employees. It is therefore necessary that the statute be reasonably construed so as to require service on an agent designated for that purpose or upon some officer or clerk at managerial level who is vested with operative authority.

The legislature, by enacting the Mississippi Business Corporation Act of 1962, changed many of our statutes governing corporations, and modernized them in order to aid and regulate present business administration. We can not hold in substance that the legislature, by this act, intended to permit a creditor to compel a third party to pay the account of the debtor when he was a stranger to any original business dealings between the creditor and a debtor, without any knowledge that a lawsuit was pending in which the third party had become involved, and who is not guilty of negligence and has not shown any disregard for the process of a court.

The solution of the question at bar was eloquently determined by Judge Griffith in his Mississippi Chancery Practice section 223 (2d ed. 1950), which is cited in Hyde Construction Co. v. Elton Murphy-Walter Travis, Inc., 227 Miss. 615, 624, 86 So. 2d 455 (1956):

It is a cardinal principal in the administration of justice that no man can be condemned, or divested of his rights, until he has had an opportunity of being heard. He must, by service of process, by publication of notice or in some equivalent way, be brought into court, and if judgment be rendered against him before that is done, the proceedings will be as utterly void as though the court had undertaken to act where the subject matter was not within its cognizance.

This case is therefore reversed and the judgment is set aside and the garnishee is discharged. The judgment of the court below rendered against the garnishee, Deposit Guaranty Bank & Trust Company, in the sum of $3,084.24 is, of course, also set aside.

Reversed, judgment set aside, and garnishee discharged.

*Ethridge, P. J., and Glliespie, Jones and Smith, JJ.,* concur.