Kristi Diann GRAVES and Michael Graves Plaintiffs

v.

Michael Howell TUBB; Delta International Machinery Corporation; A–Z John Doe; and A–Z John Doe Corporation Defendants

No. 1:02V361–MD.

United States District Court, N.D. Mississippi, Eastern Division.

Aug. 26, 2003.

Roy J. Farrell, Roy J. Farrell, Attorney, Tupelo, for Kristi Diann Graves, Michael Graves, plaintiffs.

James Mark Shelton, Shelton & Dawson, P.A., Tupelo, Craig Alan Cowart, Thomas L. Henderson, Lewis Fisher Henderson Claxton & Mulroy, LLP, Memphis, TN, for Michael Howell Tubb, Delta International Machinery Corporation, A–Z John Doe, A–Z John Doe Corporation, defendants.

## MEMORANDUM OPINION

MILLS, District Judge.

This cause comes before the court on defendant Delta International's motion to dismiss for failure to state a claim [7–1]. This court has reviewed the briefs and documents submitted by the parties and is now ready to rule.

The plaintiffs, Kristi Diann Graves and Michael Graves ("Kristi and Michael") are husband and wife. Defendant Michael Howell Tubb ("Tubb"), is Kristi's ex-husband and a former employee of Delta International Machinery Corporation ("Delta"). These parties are all resident citizens of the State of Mississippi, living in Lee County. Delta is a foreign corporation doing business in Tupelo, Mississippi. Delta is a "subscriber" of Informus Corporation ("Informus"), a credit reporting agency. It has a contract with Informus for the right to access consumer information.

### FACTS

In the course of a complaint for Modification of Judgment for Divorce which Tubb filed against Kristi, Kristi and Michael were required to produce information regarding their date of birth, address, driver's license and social security numbers. Kristi and Michael accuse Tubb of using that information and Delta's contract account number to obtain consumer credit reports and driver's license reports on them from Informus.

Kristi and Michael charge Tubb with misrepresenting them as prospective employees of Delta; and under false pretense and in violation of the Fair Credit Reporting Act, obtaining and using their information as adverse testimony in a separate court proceeding. Tubb, on thirteen different occasions, allegedly requested and received credit information on Kristi and

Michael from Informus through a fraudulent access code referred to as *"employment-related."* They contend that Tubb obtained that information to use as leverage in on-going Chancery Court proceedings involving child custody rights. Additionally, they claim that Delta authorized Tubb to use its contract number, information and facility to obtain credit reports on them; that Delta knew or should have known that Kristi and Michael should have been advised that their credit reports were going to be requested; that Delta should have obtained a written consent from them to obtain such reports; and that the information requested must support the intent of obtaining the report.

The plaintiffs' legal theories of recovery include:

- negligent and/or gross negligent training and/or supervision of Michael Tubb regarding obtaining documents regulated by the Fair Credit Reporting Act,
- negligent and/or gross negligent failure to provide adequate protection to Kristi and Michael Graves by allowing Michael Tubb to access and obtain information in violation of the Fair Credit Reporting Act § 1681(n) and § 1681(q),
- Intentional, malicious, willful, wanton, gross negligence, and negligence actions of employee Michael Tubb pursuant to the doctrine of Respondeat Superior

Kristi and Michael Graves demand judgment against Tubb and Delta International Machinery Corporation in the amount of $13,000,000.00 (thirteen million dollars) and interest and court costs. Delta moves the court to dismiss it as a defendant under Federal Rule of Civil Procedure 12(b)(6).

### STANDARD FOR MOTION TO DISMISS

A Rule 12(b)(6) motion is disfavored, and it is rarely granted. *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir.1986). In deciding a motion to dismiss under Rule 12(b)(1) or (6), the district court accepts as true those well-pleaded factual allegations in the complaint. *C.C. Port, Ltd. v. Davis–Penn Mortgage Co.,* 61 F.3d 288, 289 (5th Cir.1995). "Taking the facts alleged in the complaint as true, if it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks," dismissal is proper. *Id.* It must appear beyond doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir.1995) (alterations and citations omitted). "However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Id.* (quoting 3 Wright & Miller, *Federal Practice & Procedure: Civil 2d* 1216, pp. 156–59).

On the other hand, dismissal is never warranted because the court believes the plaintiff is unlikely to prevail on the merits. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90, (1974). Even if it appears an almost certainty that the facts alleged cannot be proved to support the claim, the complaint cannot be dismissed so long as the complaint states a claim. *Clark* at 970; *Boudeloche v. Grow Chem. Coatings Corp.,* 728 F.2d 759, 762 (5th Cir.1984). "To qualify for dismissal under Rule 12(b)(6), a complaint must on its face show a bar to relief." *Clark* at 970; see also *Mahone v. Addicks Util. Dist.,* 836 F.2d 921, 926 (5th Cir.1988); *United States v. Uvalde Consol. Indep. Sch. Dist.,* 625 F.2d 547, 549 (5th Cir.1980), *cert. denied,* 451 U.S. 1002, 101 S.Ct. 2341, 68 L.Ed.2d 858. If a required element, a prerequisite to obtaining the

requested relief, is lacking in the complaint, dismissal is proper. *Id.* See also *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). While dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings. *Clark* at 970; *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953. Furthermore, Rule 12 states that [i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Fed.R.Civ.P. 12(b). Nevertheless, district courts are "permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss." *Davis v. Bayless*, 70 F.3d 367, 376, 1995 WL 692991, *7 n. 3 (5th Cir.) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir.1994)). Even though affidavits might be present in the record, the court is not required to treat the motion as one for summary judgment if it does not rely upon such documents. *Id.*

## ANALYSIS

Delta's arguments supporting dismissal are that it cannot be held liable under the Fair Credit Reporting Act because 1) it does not impose a duty on Delta to prevent its employees from obtaining credit reports for personal use and 2) there is no basis for vicarious liability under the FCRA.

Upon extensive research, the court could find no Fifth Circuit authority addressing the duty a Credit Reporting Agency subscriber owes to an individual when its employee or agent has obtained an unauthorized credit report on that individual. Accordingly, the court relies on law provided by the parties, primarily *Kodrick v. Ferguson*, 54 F.Supp.2d 788 (N.D.Ill.1999) and *Del Amora v. Metro Ford Sales and Service, Inc.*, 206 F. Supp 2d 947 (N.D.Ill.2002)—both Seventh Circuit cases.

### I. The Alter Ego Theory

■ According to Michael and Kristi, *Kodrick* places culpability on Delta for Tubb's actions by virtue of his position with the corporation at the time he committed the violations. *Kodrick* noted that "where an employee's rank is such that he or she acts as the subscriber's alter ego, the case law ... proves that a corporate subscriber can be held liable for non-compliance." *Id.* at 797.

Using the reasoning of *Kodrick*, the plaintiffs maintain that Tubb, as Employment Relations Supervisor, acted as Delta's alter ego on each of the thirteen occasions he obtained Michael and Kristi's credit report. In response, Delta argues that Tubb fails to meet the alter ego standard. Delta cites *Kodrick*, *Del Amora* and other Illinois district court cases suggesting that liability cannot be imputed to an employer solely on the basis of an employee's rank and the ability to obtain credit reports for employment purposes. The defendant in *Kodrick* was a Senior Loan Officer at Accubanc. The *Kodrick* court refused to conclude that Ferguson's rank was high enough to make her Accubanc's alter ego simply because the plaintiff referred to her as an "officer" in the pleadings. *Del Amora* affirmed *Kodrick* in its

determination that Ferguson "did not have a high rank sufficient to deem her [the employer's] alter ego." *Del Amora* at 949.

Mississippi's law on the alter ego doctrine provides that an:

'[E]mployee' is not synonymous with the word 'agent', because an agent is one who stands in the shoes of his principal; he is his principal's alter ego. In 2 C.J.S. Agency § 1 c., p. 1024 (1936), we find the following:

An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and to render an account of it. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do.

*First Jackson Securities Corp. v. B.F. Goodrich Co.*, 253 Miss. 519, 532, 176 So.2d 272, 278 (1965). "The most characteristic feature of an agent's employment, is that he is employed primarily to bring about business relations between his principal and third persons, and this power is perhaps the most distinctive mark of the agent as contrasted with others, not agents, who act in representative capacities." *Id.* at 532–33, 176 So.2d 272.

This court finds that Tubb, like Ferguson, cannot be considered Delta's alter ego merely because he was employed as an Employee Relations Supervisor for Delta. There is no indication in the pleadings that Tubb stood in Delta's shoes—that he had the power to do the things which Delta's principal could do. Nor is there evidence that he was employed to bring about business relations between his principal and third parties. To the contrary, according to Delta, Tubb was "subordinate to many layers of supervisors." Accordingly, this court concludes that Tubb cannot be con-

sidered Delta's alter ego merely because he is referred to as a "Supervisor."

## II. Vicarious Liability

Kristi and Michael maintain that Delta may also be liable to them for Tubb's actions under the theory of vicarious liability.

Though the FCRA originally imposed civil liability on '[a]ny consumer reporting agency or user of information' that fails to comply with any requirement of the Act, in 1996, Congress amended the Act's civil liability provisions to cover '[a]ny *person* 'who willfully or negligently fails to do so. The term 'person' is defined broadly to include corporations which, as we have noted, necessarily act through their agents.

*Del* Amora at 951 (citing 15 U.S.C. § 1681a(b); *Shager v. Upjohn Co.*, 913 F.2d 398, 404 (7th Cir.1990)). Delta disagrees, noting that the FCRA is void of any language imposing requirements on "subscribers" for its employee's improper acquisition of credit reports. Delta argues that Congress, by failing to provide any language holding employers, such as Delta, liable under an agency theory when their agents knowingly violate the Act, expressly decided not to impute liability on the employer. Rather, it imposed an obligation on the CRA. The straightforward statutory scheme of the FCRA " places the primary obligation to prevent misuse with the CRA" by imposing civil liability on the CRA for "negligent or willful non-compliance." *Kodrick* at 796. (Quotation altered).

### A. Respondeat Superior

■ Under general agency rules, an employer may be vicariously liable for the acts of its employees under the doctrine of respondeat superior. *Del Amora* at 951. Under respondeat superior, if an employee's acts are committed within the scope of

employment, an employer is strictly liable. *Id.* (citing Restatement (Second) of Agency § 219(1)). An employee's act is not within scope of employment 'if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed.' *Del* Amora at 952 (citing Restatement (Second) of Agency § 235). Unquestionably, Tubb's sole purpose in obtaining Kristi and Michael's reports was for personal use and not for the benefit of Delta International. This court concludes that Delta cannot be exposed to respondeat superior liability on these facts.

### B. Apparent Authority and "Aided–in–Agency"

Kristi and Michael insist that Delta failed to train and/or supervise Tubb with respect to obtaining documents regulated by the Fair Credit Reporting Act. Their reading of *Del Amora* interprets *Kodrick* as holding "that a subscribing employer may avoid liability for its employee's unauthorized and improper acquisition of a credit report **only when that employer exercises some degree of control over that employees' ability to acquire such reports.**"

"An employer may also be subject to vicarious liability if an employee had apparent authority to act on behalf of the employer or was aided in accomplishing the wrongful act by the existence of the agency relation" *Id.* (citing Restatement (Second Agency § 219(2))). Apparent authority comes into play when an employee purports to exercise a power which he does not have. *Id.* The court concludes that apparent authority has no application in this case as it is undisputed that obtaining credit reports was one of Tubb's duties at Delta. The "aided-in-agency relation" doctrine applies where an employee threatens to misuse actual power. *Id.* (citing *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 759–60, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). More appropriate is the "aided-in-agency relation" theory. It requires a "showing that the violation was 'accomplished by an instrumentality, or through conduct associated with the agency status.'" *Del Amora* at 953 (citing Restatement (Second) Agency § 219 cmt. e).

The *Del Amora* defendant was a car salesman authorized to obtain and review credit reports for customers interested in purchasing cars. Roman obtained his brother-in-law's credit report in an effort to help his sister who was divorcing Roman. Among other things, *Del Amora* held the dealership liable under the theory of imputing liability when the employee was aided in accomplishing wrongful acts by existence of agency relationship. *Id.* at 953. Metro Ford was held liable for Roman's actions since it was in the "best position to prevent future FCRA violations through employee training and screening programs." In this case, Tubb was hired by Delta as an Employee Relations Supervisor. That position involved the hiring of employees who are required to submit to pre-employment background checks (in full compliance with the FCRA). Thus, he had the ability and job duty to obtain credit report information for the legitimate and lawful purposes of Delta International. Tubb was able to get Kristi and Michael's credit information by virtue of his position as an Employment Relations Supervisor at Delta.

This court has considered the cited cases and is not convinced that Delta could have prevented Tubb's intentional wrongs. An employer's best efforts to ensure compliance with the FCRA cannot guarantee that a rogue employee will not obtain credit report information for personal reasons. Some employee acts evidence such intentional disregard for protocol that such actions cannot be imputed to the employer.

In the absence of binding authority to the contrary, the fact that the FCRA imposes liability only for negligent noncompliance with the Act and due to the lack of evidence that Delta did not take reasonable steps to prevent Tubb's violations, the court concludes that Delta is not subject to vicarious liability under the "aided-in-agency relation" standard as set forth in *Del Amora.*

### III. Negligence

▇▇▇▇ Did Delta owe Kristi and Michael a duty to prevent Tubb from obtaining their credit reports for his personal use? Where an employer cannot be vicariously liable under the alter ego or agency theories, he may incur liability only where he "expressly or implicitly authorizes the conduct" or where the employer is negligent or reckless in allowing the conduct to occur. *Del Amora* at 952 (citing Restatement (Second) of Agency § 219(2)). *Kodrick* "expressly left open the possibility of direct corporate liability where supervisors know their facilities are being used to obtain reports for improper purposes...." *Del Amora* at 951 (citing *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 973–74 (4th Cir.1987)) (credit union was liable for employee's violation of the FCRA where anyone using the credit union's computers had access to credit reports, and the credit union posted no guidelines for obtaining them). The *Kodrick* court noted that the FCRA does not definitively impose requirements on subscribers like Delta. "There is no language in the statute ... requiring subscribers to limit requisition access to supervisors or other employees with special training regarding permissible purposes." *Kodrick* at 791. It referred to the new language in 15 U.S.C. § 1681b(f). It provides that:

[a] person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which it is authorized to be

furnished under this section; and (2) the purpose is certified in accordance with § 1681e of this title by a prospective user of the report through a general or specific certification.

*Id.* (citing 15 U.S.C. § 1681b(f)). The FCRA defines the term "person" at § 1681a(b) as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *Id.* at 790. It is undisputed that Tubb obtained the report, falsely certified the permissible purpose, and used the report for personal reasons. Are Tubb's unauthorized actions imputed to the Delta? Is the employer considered a "user" any time its facilities are used to obtain a report? The FCRA is silent on this question.

Courts which have dealt with agency gaps in other statutes disagree on what the judiciary's role should be in addressing agency gaps in statutes. In 1966 the Supreme Court declared that "[w]hether latent federal power should be exercised to displace state law is primarily a decision for Congress, not the federal courts." *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966). The existence of related federal statutes does not automatically show that Congress intended courts to create federal common-law rules as "Congress acts ... against the background of the total corpus juris of the states ...." *Kodrick* at 792 (citation omitted). Over thirty years later, in *Jansen v. Packaging Corp. of America*, 123 F.3d 490 (7th Cir. 1997), *judgment aff'd Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998),

Judge Easterbrook postulated that 'when a federal statute is silent, we obtain the necessary rule from state law, unless application of state law would undermine a federal norm.' *Jansen* at

553 (Easterbrook, J. concurring) (citing *Atherton v. FDIC*, 519 U.S. 213, 218, 117 S.Ct. 666, 670, 136 L.Ed.2d 656 (1997)). Judge Posner disagreed, noting that '[t]here is no novelty in formulating federal principles of agency law in interpreting federal statutes that are silent on agency.' *Jansen* at 507. (Posner, J. concurring) (citing *Central States Trucking Co. v. J.R. Simplot Co.*, 965 F.2d 431 (7th Cir.1992); *U.S. v. Balistrieri*, 981 F.2d 916, 930 (7th Cir.1992)). In *Burlington*, 118 S.Ct. at 2265, the Supreme Court agreed with Judge Posner 'to the extent that they saw a congressional instruction implicit in Title VII to create a federal common law on sexual harassment in the workplace.' *Kodrick* at 792.

Those few courts confronted with the agency gaps left by the FCRA have applied these general principles inconsistently. For example, *Taylor v. Checkrite, Ltd.*, 627 F.Supp. 415, 417 n. 2 (S.D.Ohio 1986), a case dealing with whether the defendant's franchisee was its agent, relied solely on Ohio law. *Kodrick* reported that in most pre-amendment case law, the corporate subscriber was deemed be a 'user' where a high-ranking officer acted as the company's alter ego in obtaining the report and knew of its illegal use. It also observed that in 1998, the Sixth Circuit applied agency principles from the Restatement to find a corporate subscriber liable for its "employee's personal misappropriation of a confidential credit report." *Kodrick* at 793 (citing *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961 (6th Cir.1998)). *Jones* held that a principal may be liable for an agent's violation of the FCRA under an apparent authority theory. "Under this form of strict liability the principal is responsible, 'irrespective of whether the agent acted for his own purposes rather than those of his principal.' " *Id.* (citations omitted). The Supreme Court explained that:

apparent authority is relevant where the agent purports to exercise a power which he or she does not have, as distinct from where the agent threatens to misuse actual power . . . . When a party seeks to impose vicarious liability based on an agent's misuse of delegated authority, the Restatement's aided in the agency relation rule provides the appropriate analysis.

*Burlington* at 2260. *Kodrick*, after studying recent legislative history (legislative history of the 1996 amendments to the FCRA "indicates that Congress did not intend that we establish differing rules for subscribers based on the agency law in each forum") and the new preemption provisions in the Reform Act, concluded that neither the *Checkrite* nor *Jones* approach was appropriate in their case. *Kodrick* believed that Congress intended to develop uniform national standards rather than different rules for subscribers based on the agency law in each state. *Kodrick* at 794. To illustrate, provision § 1681t gives industry an eight-year preemption from state laws regulating the acquisition and disclosure of consumer credit information, even where the state laws provide greater protection for consumers. *Id.* Furthermore, the FCRA's "stated purpose, structure, and legislative history all suggest that Congress wanted to place the responsibility for breaches of confidentiality primarily on the credit reporting agencies." *Id.* "Under the act, the primary duty assigned to users of consumer information is mandatory disclosure to a consumer of the name and address of the CRA that provided a report when the consumer is adversely affected by the dissemination of information provided for employment purposes. . ." *Id.* at 795

 This court finds no record evidence showing that Delta was aware of Tubb's impermissible conduct much less

that Delta expressly or implicitly authorized Tubb to use their facilities to obtain reports for impermissible purposes. In light of the absence of language imposing requirements on subscribers like Delta in the FCRA; the relative legislative history; and the Supreme Court's bias in favor of letting Congress decide "whether federal power should be exercised to displace state law," this court finds that Congress placed duties and potential liabilities on CRA's and individuals who engage in unlawful conduct of obtaining credit reports for personal use, not on employers such as Delta. This court finds that users have only a limited responsibility and it will not shift the duty of compliance Congress placed on CRA's and individuals who knowingly violate the law to employers such as Delta. Accordingly, it concludes that Delta had no duty under the FCRA for which it can be held liable in this case.

## CONCLUSION

In sum, this court concludes that Tubb was not acting within the scope of his employment and, therefore, Delta cannot be exposed to respondeat superior liability; that Delta is not subject to vicarious liability under the "aided in the agency relation" as it cannot ensure employee compliance with the FCRA; and that Delta cannot be liable directly under the FCRA since the plaintiffs offered no evidence showing that Delta was aware of Tubb's impermissible conduct.

A separate order to that affect shall issue this day.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

In accordance with the memorandum opinion issued this day, the defendant's motion to dismiss is **GRANTED** as to all claims.